[L.A. No. 31945. Dec. 17, 1984.]

ANDREW LEO PRICE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
M & B PAPER PRODUCTS et al., Respondents.

**Counsel**

Rose, Klein & Marias, Michael H. Pinchak and Alan J. Stein for Petitioner.

Robert R. Dickinson and Dickinson & Hester for Respondents.

**Opinion**

**BIRD, C. J.**—Does the "going and coming rule" preclude an award of workers' compensation benefits to an employee who is injured while waiting for his place of employment to open?

I.

Approximately 7:50 a.m. on June 20, 1980, petitioner, Andrew Leo Price, was injured outside his place of employment. Price had arrived at work at 7:45 a.m. Since no lot was provided for employee parking, Price parked his car on the same side of the street as his employer's premises.

Although Price's job officially began at 8 a.m., he generally arrived at work early. Often the premises were open before 8 a.m. If he arrived early

and the doors were open, Price would usually begin working. Closing time was 4:30 p.m., regardless of when the employee actually started to work.

The employer's building was half a block wide and fronted directly on the sidewalk. There was no place on the premises where employees could wait if they arrived early. In fact, the employees could not gain access to the premises at all until the doors were unlocked.

On the morning of the accident, Price intended to start work early. However, the doors to the premises were locked and neither his supervisor's nor his boss's car was parked nearby. Since he could not enter the premises, he decided to put a quart of oil into the engine of his car while he waited. As he put the oil into his car, Price straddled the left headlight and extended his right leg to the side. A passing car struck Price's leg. He now seeks compensation for those injuries.

The workers' compensation judge found that Price was injured "in the course of the employment." Although Price was not physically on the employer's premises when the accident occurred, he was waiting to be admitted to work. Further, the workers' compensation judge held that pouring oil into a car was an act of "personal convenience" that did not abrogate the employment relationship.

Upon reconsideration, the Workers' Compensation Appeals Board (board) rescinded the award based on the "going and coming rule." The board relied on the fact that Price was not on the employer's premises when he was injured. Therefore, they concluded that he had not completed his journey to work. (See *General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 600 [128 Cal.Rptr. 417, 546 P.2d 1361] (hereafter *Chairez*).)

## II.

An employer is liable under the Workers' Compensation Act (Act) (Lab. Code, § 3201 et seq.) for injuries "arising out of and in the course of the employment." (Lab. Code, § 3600.)[1] The going and coming rule is among the judicially created doctrines that define that statutory requirement. (*Parks* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 585, 588 [190 Cal.Rptr. 158, 660 P.2d 382]; *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 153 [104 Cal.Rptr. 456, 501 P.2d 1176].) The rule

---

[1]Labor Code section 3600 provides in part as follows: "Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . ."

provides that an injury suffered "during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances" is not within the course of employment. As such, it is not compensable. (*Id.*, at p. 157.)

As Justice Tobriner noted in *Hinojosa*, the going and coming rule has had a "tortuous history." (*Hinojosa, supra,* 8 Cal.3d at p. 156.) ■ Much criticized and subject to numerous exceptions, the rule is difficult to apply uniformly. (See *Parks, supra,* 33 Cal.3d at p. 589 & fn. 4; *Hinojosa, supra,* 8 Cal.3d at p. 156; *Bramall* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 151, 156 [144 Cal.Rptr. 105].) Neither the rule nor its exceptions are susceptible to "automatic application." (*Hinojosa, supra,* 8 Cal.3d at p. 156.) Each case must be judged on its own "unique facts." (*Id.*, at p. 155; *Makins* v. *Industrial Acc. Com.* (1926) 198 Cal. 698, 703 [247 P. 202, 49 A.L.R. 411] ["Industrial accidents are produced by so many varying circumstances that it is rather unusual to find any two or more cases that may be ruled by the same legal precedent."]; *Bramall, supra,* 78 Cal.App.3d at p. 158.)

Application of the rule has been especially difficult in "borderline cases" where the employee is hurt close to or on the employer's premises immediately before or after work. (*Parks, supra,* 33 Cal.3d at p. 589; see also *Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com.* (1943) 21 Cal.2d 751, 754 [135 P.2d 158].) ■ In determining whether the going and coming rule bars compensation in a particular case, the courts must abide by the mandate of Labor Code section 3202, which provides that the Act "shall be liberally construed" to protect the injured.[2] Any doubts as to the rule's application are to be resolved in favor of coverage. (*Hinojosa, supra,* 8 Cal.3d at p. 155-156; *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 866-867 [101 Cal.Rptr. 105, 495 P.2d 433]; *Bramall, supra,* 78 Cal.App.3d at p. 158.)

■ The issue presented here—whether the going and coming rule applies to an employee who has arrived at work but is unable to gain access to the premises—is a question of first impression. ■ The going and coming rule governs injuries incurred "during the course of a local commute" (*Chairez, supra,* 16 Cal.3d 595, 598) or "while travelling to and from work" (*Parks, supra,* 33 Cal.3d at p. 588). However, it does not apply to an employee who has arrived at his or her workplace.

■ When Price found the doors to his employer's premises locked, he was at his place of employment. Thus, he was not injured "in the course

---

[2]Labor Code section 3202 provides as follows: "The provisions of [the Act] shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

of a local commute." Price had finished his journey to work although, because the doors were locked, he had not yet entered his employer's premises. In light of the rule of liberal construction, this court holds that where an employee is injured outside the employer's premises while waiting[3] to be admitted to the workplace, the injury occurs within the course of the employment and is compensable.

This court has often held off-premises injuries compensable. "Although many of our decisions have involved injuries on premises owned or controlled by the employer, we have refused to regard either attribute as a *sine qua non* for compensation." (*Lewis* v. *Workers' Comp. Appeals Bd.* (1975) 15 Cal.3d 559, 562 [125 Cal.Rptr. 353, 542 P.2d 225].) ■ For example, the "special risk" exception to the going and coming rule provides for compensation where a risk associated with the employment causes injury just outside the employer's premises. (See, e.g., *Parks, supra,* 33 Cal.3d at p. 593; *Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490, 492-493 [47 Cal.Rptr. 384, 407 P.2d 296]; *Freire* v. *Matson Navigation Co., supra,* 19 Cal.2d at p. 11.)

Although the special risk exception need not be invoked here because the going and coming rule does not apply, the exception supports by analogy the conclusion that Price's injury occurred within the course of his employment.

"If, prior to entry upon the premises, an employee suffers injury from a special risk causally related to employment, the injury is compensable under the 'special risk' exception to the going and coming rule." (*Chairez, supra,* 16 Cal.3d at p. 600.) More broadly stated, the special risk exception implies "a zone of employment, varying in distance, measured by the special circumstances of each case and defined by the nature of the employment." (*Lefebvre* v. *Workers' Comp. Appeals Bd.* (1980) 106 Cal.App.3d 745, 750 [165 Cal.Rptr. 246].)

The employer's premises were not opened at the same time every morning. Therefore, an employee who wished to start working early, or even promptly, might be forced to wait for the doors to be unlocked after he arrived at the workplace. The employer did not provide a parking area or a place in which his employees could wait. In fact, the employees did not have access to any part of the premises before the doors were unlocked. As the workers' compensation judge stated, "[s]ince the employer's building

---

[3]"The fact that the accident happened some minutes before plaintiff was to begin work is immaterial." (*Freire* v. *Matson Navigation Co.* (1941) 19 Cal.2d 8, 13 [118 P.2d 809]; accord *Pacific Indem. Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 329, 338 [170 P.2d 18].)

is right next to the public sidewalk, it is obvious that applicant could not get onto the employer's premises and wait for the doors to be opened. He had to wait off the premises." Thus, when Price waited near his car for the doors to be opened, he was within the "zone of employment" under the "special circumstances" of this case.

Relying on the *Chairez* case, the board denied compensation on the ground that Price was not on the employer's premises but was out in the street when he was hit by a passing car. The board invoked the so-called "premises line" test. ■ "For purpose[s] of the [going and coming] rule, the employment relationship does not begin until an employee enters the employer's premises. Prior to entry the going and coming rule ordinarily precludes recovery; after entry, injury is generally presumed compensable as arising in the course of employment." (*Chairez, supra,* 16 Cal.3d at p. 598.)

However, the "premises line" test should not preclude compensation here. In *Chairez,* the employee was killed while walking across the street away from his parked car and toward the workplace. He was still on his way to work when the accident occurred because he had not yet reached the employer's premises. (*Chairez, supra,* 16 Cal.3d at p. 600.) Price, on the other hand, was no longer traveling toward the workplace when the accident occurred. Instead, he had arrived, parked, and observed that he could not gain access to the premises until one of his superiors arrived.

■ In sum, Price's injury does not fall within the going and coming rule because Price had finished his commute and was waiting to be admitted to his employer's premises when the accident occurred. Price was forced to wait outside the premises because the employer provided no place on the premises for the employees to wait. Moreover, Price's early arrival was usually a benefit to the employer since he worked extra time uncompensated.

■ The board argues that even if the going and coming rule is inapplicable, Price was not injured within the course of employment. According to the board, Price temporarily abandoned his employment relationship when he decided to put oil in his car while waiting to be admitted to the workplace. Price contends that pouring oil in his car was an act of "personal convenience" and compensable.

■ " ' "Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment." ' "

(*Whiting-Mead Co.* v. *Indus. Acc. Com.* (1918) 178 Cal. 505, 507 [173 P. 1105, 5 A.L.R. 1518]; accord *Employers' etc. Corp.* v. *Indus. Acc. Com.* (1940) 37 Cal.App.2d 567, 573 [99 P.2d 1089] (hereafter *Burnett*).) This court has noted that the personal convenience exception " 'is not limited to acts performed on the employer's premises.' " (*State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 925, 927-928 [64 Cal.Rptr. 323, 434 P.2d 619].)

▆▆▆ Acts of "personal convenience" are within the course of employment if they are " 'reasonably contemplated by the employment.' " (*Pacific Indem. Co.* v. *Ind. Acc. Com.* (1945) 26 Cal.2d 509, 514 [159 P.2d 625]; accord *North American Rockwell Corp.* v. *Workmen's Comp. App. Bd.* (1970) 9 Cal.App.3d 154, 158 [87 Cal.Rptr. 774] (hereafter *Saska*); *Burnett, supra,* 37 Cal.App.2d at p. 573.) Courts consider the nature of the act and the nature of the employment, the custom or usage of the employment, the terms of the employment contract, and "other factors." (*Ibid.*; *Saska, supra,* 9 Cal.App.3d at p. 158.) In view of the policy favoring employee compensation, doubts as to whether an act is reasonably contemplated by the employment are resolved in favor of the employee. (*Ibid.*; *Burnett, supra,* 37 Cal.App.2d at pp. 573-574.)

▆▆▆ The evidence presented at the workers' compensation hearing indicated that the doors to the workplace were not opened at the same time every morning. Usually they were opened early, but at times they were not unlocked until after the official starting time of 8 a.m. Waiting outside the employer's premises was, therefore, "reasonably contemplated by the employment."

As the workers' compensation judge noted, "[w]hen people are waiting for something to happen, they rarely stand in one spot; 'they occupy.' " However, instead of idly pacing, Price made use of the time by adding oil to his car. His act was not "wholly unreasonable" but was "normal, proper and reasonably to be expected." (*Saska, supra,* 9 Cal.App.3d at pp. 158, 160.) Performing a minor personal task while waiting to begin work is a "normal human response." Therefore, it is within the reasonable contemplation of the employment contract. (*Id.*, at p. 159.) As the court in *Saska* pointed out, "[h]uman services cannot be employed without taking the whole package." (*Ibid.*; *Fremont Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1977) 69 Cal.App.3d 170, 177 [137 Cal.Rptr. 847].)

Although Price's conduct was reasonably contemplated by his employment, the board contends that Price's act of "personal convenience" was not within his course of employment because it did not help him to perform his work more efficiently. However, a strong nexus between the personal

act and increased efficiency is not a prerequisite to coverage. (See, e.g., *Leffert* v. *Industrial Acc. Com.* (1934) 219 Cal. 710 [28 P.2d 911] [employee hit by a car while enroute to employer's burned building to retrieve his overcoat]; *Pacific Indem. Co.* v. *Ind. Acc. Com.*, *supra*, 26 Cal.2d 509 [agricultural workers drowned in irrigation reservoir while washing up after work]; *Burnett, supra,* 37 Cal.App.2d at p. 574 [domestic servant "on call" hurt while hemming a dress].) "While [the benefit] rationale is still reflected in the decisions, it is apparent from an examination of the cases . . . that benefit to the employer was presumed and in some cases little more than fiction." (*Saska, supra,* 9 Cal.App.3d at p. 160.)

In *Saska,* the employee was injured after work in the employer's parking lot as he tried to start the car of a coworker. The court in *Saska* questioned the continuing utility of the employer benefit principle as a rationale for the personal convenience rule. Nevertheless, the opinion cites goodwill among employees as a potential benefit to the employer, just in case "the element of 'benefit' retains any validity today." (*Saska, supra,* 9 Cal.App.3d at p. 160.) Under the benefit test applied in *Saska,* the employer here was benefited because Price was ensuring that his car, which he drove to work, remained operable. (See *Burnett, supra,* 37 Cal.App.2d at pp. 573-574 [employee's act of hemming her dress furthered her work " 'in a remote sense' " because she was required to be "neat in dress and general appearance"].)

Moreover, as Price put oil in his car, he provided a benefit to the employer by waiting near the premises so he could enter and begin work as soon as the doors were unlocked. Although Price was engaged in a personal act, he was also serving the employer's interests. Therefore, the injury may be viewed as occurring within the course of employment under the "dual purpose" rule. ▪ "[W]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer." (*Lockheed Aircraft Corp.* v. *Ind. Acc. Com.* (1946) 28 Cal.2d 756, 758-759 [172 P.2d 1]; accord *Bramall, supra,* 78 Cal.App.3d at p. 157.)

▪ The dual purpose doctrine generally applies as an exception to the going and coming rule when an employee who is hurt during a local commute is taking work home with him. (*Bramall, supra,* 78 Cal.App.3d 151, 156.) It is also invoked when an accident occurs in the course of a business trip or errand during which the employee takes care of some personal business. (*Lockheed, supra,* 28 Cal.2d 756; *Matthews* v. *Naylor* (1941) 42 Cal.App.2d 729 [109 P.2d 758].) In addition, the dual purpose doctrine has

been applied to hold that an employee's leisure time activity was within the course of employment, where it was reasonably contemplated by the employment and benefited the employer as well as the employee. (See *Dimmig, supra,* 6 Cal.3d at pp. 864-866, and cases cited.)

In *Dimmig,* this court held that an injury incurred in connection with attendance at night school was reasonably contemplated by the employment because it benefited the employer as well as the employee. (*Dimmig, supra,* 6 Cal.3d at pp. 865-866.) *Dimmig* falls somewhere between the personal convenience and the dual purpose doctrines. As in personal convenience cases, the court applied the "reasonably contemplated" test and pointed to the benefit to the employer. (*Ibid.*) However, attendance at night school is not an act of "personal comfort or convenience" which temporarily improves employee efficiency. *Dimmig* is more akin to the "dual purpose" cases where an off-premises activity provides a direct benefit to the employer and benefits the employee as well. (See *Bramall, supra,* 78 Cal.App.3d at pp. 156-157 [treating *Dimmig* as a "dual purpose" case].)

■ This case involves elements of both rules. Pouring a quart of oil into his car while waiting to begin work is an "act of personal comfort or convenience" that is "reasonably contemplated" within the course of Price's employment. In addition, Price's injury falls within the dual purpose doctrine because he was providing a benefit to his employer by arriving at work early. This court need not determine which of the two rules better fits the facts of this case. (See *Fremont Indemnity, supra,* 69 Cal.App.3d at p. 177.) "[T]he point is that the activity was reasonably to be contemplated because of its general nature as a normal human response in a particular situation . . . ." (*Saska, supra,* 9 Cal.App.3d at p. 159.)

### III.

Price was within the course of his employment when he was injured, and he should be compensated for his injuries. A passing car struck him after he had finished his journey to work and while he was waiting for the doors of his employer's premises to be unlocked. The injury was not sustained "during the course of a local commute" so the going and coming rule does not apply.

Price did not abandon his employment relationship when he decided to add oil to his car while waiting to enter his employer's premises. Pouring oil into a car is an act of personal convenience reasonably contemplated under the circumstances which included, on occasion, a wait outside the employer's premises for the doors to be unlocked. Moreover, Price's conduct was within the course of his employment under the dual purpose rule.

As he poured oil into his car he was serving the interests of his employer by waiting near the premises to begin work early.

Accordingly, the decision of the board is annulled and the cause remanded for further proceedings consistent with the views expressed herein.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

LUCAS, J.—I respectfully dissent.

Applicant Price was injured *outside* the work premises, *before* working hours, while engaged in an act of *personal* convenience. Under such circumstances, his injuries were not compensable under the workers' compensation laws.

The majority holds that all injuries that occur while awaiting entry to the employment premises are compensable. (*Ante,* pp. 565-566.) I fail to see how the act of awaiting entry *before* ordinary working hours reasonably may be deemed to arise "out of and in the course of the employment." (Lab. Code, § 3600.) Moreover, I think it is anomalous that compensation must be granted to one, such as applicant, who is injured while attending his parked car, but is denied to an employee *who has already left his car* and is injured while walking toward his workplace. (*General Ins. Co.* v. *Workers' Comp. Appeals Bd. (Chairez)* (1976) 16 Cal.3d 595, 598-600 [128 Cal.Rptr. 417, 546 P.2d 1361] [adopting the "premises line" test].) Surely, in neither case has the ordinary morning "commute" ended, for in neither case has the employee actually entered the work premises. This fact is even more apparent here, where the injury occurred before working hours had commenced.

Nor was any "special risk" created by the employment in this case which might make inapplicable the going and coming rule. Contrary to the majority's characterization, applicant was not "forced" to wait in a place of danger such as the applicant in *Parks* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 585 [190 Cal.Rptr. 158, 660 P.2d 382] (applicant injured while stuck in usual heavy school traffic outside workplace). There was no indication in the record that applicant herein was regularly subjected to any delay in work access or to any foreseeable risk of injury, or that any prior, similar accidents had ever taken place. In essence, applicant was injured while engaged in an act of personal convenience of no benefit to his em-

ployer, prior to his ordinary working hours. Workers' compensation should not be available under those circumstances.

I would affirm the board's decision denying benefits.